IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RICK JEAN, | ) | |
|     Plaintiff, | ) | Case No. 7:20-cv-00415 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| J. SMALLWOOD, *et al.*, | ) |     United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Rick Jean, a federal inmate in the custody of the Bureau of Prisons (BOP) and proceeding *pro se*, filed this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). His current operative complaint, which is the amended complaint, names twenty defendants. (Am. Compl., Dkt. No. 16.) It asserts a number of Eighth Amendment claims of excessive force and bystander liability, and also includes allegations that could be construed as asserting other types of claims, as noted in defendants' first motion to dismiss. By way of example only, Jean alleged that several of the defendants were deliberately indifferent to the conditions of his confinement, and also that staff interfered with his grievances and legal mail.

After Jean failed to maintain a current address with the Clerk, the court dismissed the action without prejudice. (Dkt. No. 60.) Jean later filed a motion to reopen. (Dkt. No. 64.) Thereafter, the case was transferred to the undersigned (Dkt. No. 66), and the court granted Jean's motion, reopened the case, and denied Jean's motion to amend without prejudice but allowed him to file a motion to amend within thirty days. (Dkt. No. 72.).

Now pending before the court is Jean's motion to amend, which includes his proposed second amended complaint. The proposed second amended complaint asserts only excessive force claims based on a five-day period in June 2019, and so the court deems the case as only

including those claims at this point.[1]  Notably, moreover, the proposed second amended complaint contains a general summary of Jean's claims, a description of his damages, and a request for relief, but it contains none of the detailed factual allegations that are set forth in his amended complaint.  (*Compare, e.g.*, Dkt. No. 16 *with* Dkt. No. 73-1.)

Defendants have responded and opposed amendment on the grounds that amendment would be futile.  (Dkt. No. 74.)  Their response also asks that the case be dismissed in its entirety, incorporating by reference arguments they previously made in their motion to dismiss or, in the alternative, for summary judgment.  (*Id.* at 3 & n.1 (incorporating Dkt. Nos. 32, 33).)  Their primary legal argument is that there is no damages remedy for Jean's excessive force claims, and they rely on several cases, including the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022).  Jean has filed a response in opposition (Dkt. No. 76) and also has filed motions to appoint counsel, which the court will deny as moot.

As a stand-alone complaint, Jean's second amended complaint fails to plead factual allegations sufficient to state a claim against any defendant.  In particular, his second amended complaint does not allege any particular conduct by any specific defendant.  As such, the court could deny leave to amend as futile on this basis.  This would not be an unfair result, especially because Jean was repeatedly advised that any second amended complaint should be a stand-alone complaint that is complete in all respects.  (*See, e.g.*, Order 3, 4, Dkt. No. 72.)

Instead, though, the court will grant Jean's motion to amend in part, in that it will accept his second amended complaint for filing and will treat his complaint as containing only excessive force claims arising from the June 2019 time-period.  Because Jean is proceeding *pro se*,

---

[1] As noted, Jean's amended complaint contains other types of claims and also asserts excessive force claims based on a September 26, 2019 incident, which defendants previously argued should have been severed from the claims in this case.  (*See* Defs.' Mem. Supp. Mot. Dismiss 2 n.3, Dkt. No. 33.)

moreover, the court also will consider the factual allegations in his amended complaint that relate to excessive force in June 2019 when determining whether he has failed to state a claim. Even considering those factual allegations, though, the court agrees with defendants that there is no legal remedy for his excessive force claims. Especially after the Supreme Court's recent decision in *Egbert*, the court concludes that there is not currently an implied damages remedy for such claims. And—under *Egbert*'s reasoning—any such new remedy must be created by Congress, not the courts. Accordingly, Jean's claims must be dismissed.

For these reasons, discussed in more detail herein, Jean's motion to amend (Dkt. No. 73) will be granted in part, insofar as the court has considered the viability of the claims he raises in that complaint (in conjunction with the allegations he previously set forth in support of those claims), but otherwise denied because his claims are subject to dismissal and futile. Defendants' request for dismissal (Dkt. No. 74) will be granted. Defendants' prior motion to dismiss or for summary judgment (Dkt. No. 32) and Jean's recent motions for appointment of counsel (Dkt. Nos. 76, 77) will be denied as moot.[2]

## I. FACTUAL BACKGROUND[3]

As noted, Jean's amended complaint names twenty defendants. In general terms, Jean alleges that certain defendants violated his Eighth Amendment rights by physically assaulting him and by subjecting him to unnecessary restraints between June 6, 2019, and June 10, 2019.

---

[2] Jean contends that he needs counsel to help him get out of prison so he can avoid "ongoing attacks" from correctional officers. He also states that he needs counsel to assist him in raising various challenges to his criminal conviction and/or sentence. First of all, those claims are not at issue in this lawsuit. Even if his motions for counsel were not moot, the court would not grant them because it does not find "exceptional circumstances" warranting the appointment of counsel. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) (explaining that the court may only request that an attorney represent an indigent plaintiff when "exceptional circumstances" exist); *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard, v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989) (noting that exceptional circumstances depend on the type and complexity of the case and the ability of the plaintiff to present it).

[3] Because the only claims Jean continues to advance are the excessive force claims based on the June 2019 time-period, the court only sets forth the background as to those claims.

(*See generally* Am. Compl., Dkt. No. 16.)  As to most of the defendants, Jean asserts allegations of abuse and harassment (both verbal and physical) and alleges that they used excessive force while he was restrained and while he was in a solitary cell for disciplinary reasons.  In particular, he alleges that he was pulled out of a holding cell in the Special Housing Unit on June 6, 2019, and—while restrained—was jumped on, beaten, and abused and then "dragged" to another cell where he was tied down with four-point restraints.  Thereafter, officers entered his cell almost hourly.  While he was tied down, they would come in, place a shield over his chest for no reason, and then pound on it forcefully.  (*See id.* at 8.)  He alleges that other defendants, some of whom were supervisory officials, failed to intervene, or "enforce[d]" the abuse by ignoring the uses of force and instead requiring Jean to sing or otherwise taunting or verbally abusing him.  (*See, e.g.*, *id.* at 12, 13.)

In both his amended complaint and his second amended complaint, Jean claims that the assaults resulted in physical injuries to him and that he is still experiencing signs of "nerve damage."  (2nd Am. Compl. 2, Dkt. No. 73-1.)  He further alleges that the assaults caused him to become suicidal and caused him severe emotional distress.  (*Id.*)

## II.  DISCUSSION

### A.  Motion to Amend and Rule 12(b)(6) Standard

Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend may be denied, among other circumstances, where "the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citation omitted).  A proposed amendment is futile when it "is clearly insufficient or frivolous on its face" and thus would be subject to dismissal. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  Here, amendment would be futile because the limited allegations in Jean's proposed second amended complaint fail to state a claim.  Even when the court gives him

4

the benefit of considering the related, detailed factual allegations in his amended complaint, though, his claims are not cognizable.

**B. Jean's Claims Are Not Cognizable Under *Bivens* and its Progeny.**

    **1. The framework for determining whether the court should find an implied cause of action**

Defendants' primary argument in opposition to amendment—also referenced in their original motion to dismiss—is that there is no *Bivens*-like remedy for Jean's excessive force claims. (*See* Opp'n to Mot. to Amend 3, Dkt. No. 74; *see also generally* Defs.' Mem. Supp. Mot. Dismiss, Dkt. No. 32.) The Supreme Court first recognized an implied cause of action for a constitutional violation by federal officers in *Bivens*, where it held that there was an implied claim for money damages available under the Fourth Amendment where the plaintiff alleged that federal officers had searched his apartment and arrested him without a warrant or probable cause and used unreasonable force in doing so. *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019) (describing *Bivens*). Since then, the Court extended *Bivens* to other factual situations only in two cases:

> In the first, *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that the equal protection component of the Fifth Amendment's Due Process Clause provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. *See id.* at 248–49. And in the second, *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal jailers to treat his asthma. *See id.* at 19.

*Tun-Cos*, 922 F.3d at 521. The Supreme Court has not recognized a *Bivens*-type remedy outside of those contexts, however, and has repeatedly declined to do so "in *any* additional context." *Id.* (collecting authority). Accordingly, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 522 (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 675 (2009)).

Most recently, the Supreme Court refused to recognize a *Bivens*-type remedy in a case that was factually very similar to *Bivens*. *Egbert v. Boule*, 142 S. Ct. 1793, 1803–04, 1807–09 (2022); *id.* at 1815 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("At bottom, Boule's claim is materially indistinguishable from the claim brought in *Bivens*."); *id.* at 1810 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself."). In doing so, the Supreme Court made clear that the types of claims for which there is a *Bivens*-type remedy is extremely limited. *See Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril."). Indeed, in his concurrence, Justice Gorsuch suggested there could be no further cases recognizing a cause of action under the Court's reasoning and test. *Egbert*, 142 S. Ct. at 1810 (Gorsuch, J., concurring) (stating that "it's hard to see how" any case "ever could" satisfy the standard set forth by the Court and that "sometimes, it seems, 'this Court leaves a door ajar and holds out the possibility that someone, someday might walk through it' even as it devises a rule that ensures 'no one . . . ever will.'") (citation omitted).

The Fourth Circuit recently relied on *Egbert* and other authority in ruling that a BOP inmate's Eighth Amendment claims based on the conditions of his confinement were different from any of the prior Supreme Court decisions "finding a *Bivens* cause of action and that the relief he seeks in this new context should be provided by Congress, if at all." *Tate v. Harmon*, 54 F.4th 839, 2022 WL 17588046, at *1 (4th Cir. 2022). The *Tate* court discussed at length the Supreme Court's emphasis on separation-of-powers principles in this context. *Id.* at *2–*3. As the Supreme Court has stated, in the years since *Bivens*, the Court has "come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of

6

legislative and judicial power." Id. at *3 (citing *Egbert*, 142 S. Ct. at 1802).  Indeed, the *Egbert* Court observed that "creating a cause of action is a legislative endeavor" and "the Judiciary's authority to do so *at all* is, at best, uncertain." *Id.* (citing *Egbert*, 142 S. Ct. at 1802–03 (emphasis added by *Tate*).

The *Tate* court followed the two-step analysis discussed by the Supreme Court and in the Fourth Circuit's prior cases, including *Tun-Cos*.  At the first step, the court should decide whether the claims arise in a "new *Bivens* context." *Tun-Cos*, 922 F.3d at 522 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857–60 (2017)).  A context is new when "different in a meaningful way" from the three previous *Bivens* cases.  *Tate*, 2022 WL 17588046, at *3 (quoting *Ziglar*, 137 S. Ct. at 1859)).  The *Tate* court emphasized that "'new context' must be understood broadly [and] that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Id.* at *5 (citing *Egbert*, 142 S. Ct. at 1805).

"If the context is *not* new . . . then a *Bivens* remedy" is available.  *Tun-Cos*, 922 F.3d. at 522–23 (emphasis in original).  If the context is new, then the court turns to the second step, which requires it to determine whether "special factors counsel[] hesitation" in recognizing an implied cause of action.  *Ziglar*, 137 S. Ct. at 1857 (citations omitted).

In *Egbert*, the court observed that "those [two] steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803.  Indeed, if "there is *any* rational reason (even one) to think that *Congress* is better suited" to resolve the cost-benefit analysis of letting a damages action lie, an implied action is precluded.  *Id.* at 1805.  The *Tate* court recognized this conflation of the two steps, as well, explaining that "in *Egbert*, . . . the Court recognized a substantial overlap between the factors relevant to" the two steps, "often leading to an analysis that addresses just a single question: 'whether there is any reason to think that Congress might be better equipped to create a

7

damages remedy.'" *Tate*, 2022 WL 17588046, at *6 (quoting *Egbert*, 142 S. Ct. at 1803).

### 2. Jean's excessive force claims arise in a new context.[4]

Applying this analysis to Jean's claims, the court has no difficulty in concluding that Jean's remaining claims—all of which are excessive force claims—arise in a new context, as the Supreme Court has never ruled that a damages remedy exists for claims of excessive force by BOP officers against an inmate. As noted above, the context could be "new" for a reason as simple as "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches . . . ." *Tun-Cos*, 922 F.3d at 523 (quoting *Ziglar*, 137 S. Ct. at 1859–60)). Put differently, "the new-context inquiry is easily satisfied." *Ziglar*, 137 S. Ct. at 1865. As the *Tate* court cautioned, "courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*." *Tate*, 2022 WL 17588046, at *4.

None of the three cases—*Bivens*, *Davis*, or *Carlson*—involved Eighth Amendment claims alleging an improper use of force by BOP officers (or related bystander liability claims).

---

[4] The Fourth Circuit's recent decision in *Tate* compels the conclusion that there is not a *Bivens*-type remedy for the conditions-of-confinement claims that Jean advanced in his now-superseded complaint, either. *See generally Tate*, 54 F.4th 839, 2022 WL 17588046. Other courts, too, have reached the same conclusion for conditions-of-confinement claims against the BOP and refused to find a damages remedy for such claims. *E.g.*, *Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019); *Williams v. Lynch*, No. 1:16-cv-3043-DCC, 2018 WL 4140667, at *4 (D.S.C. Aug. 30, 2018), *reconsideration granted in part on other grounds*, *Williams v. Bennett*, No. 1:16-cv-3043-DCC, 2019 WL 1614829, at *2 (D.S.C. Apr. 16, 2019); *Fuquea v. Mosley*, No. 1:19-1392-HMH-SVH, 2020 WL 3848150, at *6–7 (D.S.C. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1899493 (D.S.C. Apr. 16, 2020). Indeed, even in cases where the prisoner claims—as the plaintiff did in *Carlson*—that the medical care he received at a BOP facility was constitutionally insufficient, some courts have held that a difference in facts meant that the plaintiff's claims arose in a new context. *E.g.*, *Washington v. Fed. Bureau of Prisons*, No. CV 5:16-3913-BHH, 2022 WL 3701577, at *8 (D.S.C. Aug. 26, 2022) (holding that federal prisoner's Eighth Amendment claims of deliberate indifference to ongoing, non-life-threatening medical issues did not state a cause of action after *Egbert*).

Moreover, the last distinction referenced above—"the risk of disruptive intrusion by the Judiciary into the functioning of other branches"—is particularly important here. According to his own allegations, Jean was being restrained allegedly as a result of his own behavior and as a disciplinary measure.[5] If the court were to create a judicial remedy here, it would be interjecting the judiciary into decisions about when and under what circumstances restraints may be used. It also would be creating potential liability for assaults by BOP officers, especially as related to the use of restraints. These are issues that could have far-reaching consequences to the daily operation of BOP facilities. *Cf. Egbert*, 142 S. Ct. at 1803 (noting that "a court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*").

3. **Special factors counsel against recognizing an implied cause of action because Congress is better suited to make the determination of whether one is appropriate and desirable.**

As previously explained, once a claim is determined to arise in a new context, then the court should not imply a cause of action if "there is *any* rational reason (even one) to think that *Congress* is better suited to weight the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (cleaned up). And as in *Egbert* and *Tate*, the court concludes that there is certainly at least one "rational reason" why Congress would be better equipped than the courts to determine whether to allow such claims.

First of all, as in *Tate*, "[t]he political branches are indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" *Tate*, 2022 WL 17588046, at *7 (quoting *Egbert*, 142 S. Ct. at 1804). Indeed, Congress's inaction and failure to provide a damages remedy, particularly where it has enacted sweeping

---

[5] Although the court is not ruling on summary judgment and thus does not rely on the documents submitted by defendants as part of their motion, there is substantial documentation explaining what force was used against Jean and why, as well as why it was deemed appropriate to place him in ambulatory restraints and later four-point restraints.

9

reforms of prisoner litigation, suggest that an extension of a damages remedy for other types of mistreatment should not be judicially created.  See *Ziglar*, 137 S. Ct. at 1865 ("[I]t seems clear that Congress had specific occasion to consider the matter of prisoner abuse and consider the proper way to remedy those wrongs" and Congress's declining to provide a "damages remedy against federal jailers . . . suggests [that] Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.").

Additionally, courts have long been committed to avoiding judicial intervention in the running of prisons or in matters of security within prisons.  As noted, allowing liability for these types of claims opens up BOP officers to significant potential liability for the BOP's decisions about how to discipline inmates and when and under what circumstances it is appropriate to restrain them.  This fact, too, counsels against recognizing an implied cause of action for Jean's claims, which largely stem from officials' response to his alleged misconduct.  *See Landis v. Moyer*, No. 1:19-CV-470, 2022 WL 2677472, at *7  & n.5 (M.D. Pa. July 11, 2022), *appeal docketed*, No. 22-2421 (3d Cir. Aug. 5, 2022)  As explained by the *Landis* court, "excessive-force claims against federal prison officials [ ] squarely implicate BOP policy and are inextricably tied to the preservation of institutional rules and order.  Adjudicating prisoner excessive-force claims would also entangle the federal judiciary in byzantine issues of prison administration and institutional security and would impact BOP operations systemwide."  *Id.*

There are other factors, as well, that caution against finding an implied cause of action here.  For example, the existence of alternative remedies available to federal prisoners like Jean strongly cautions against an expansion of *Bivens* into a new context.  *Ziglar*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").  As explained in *Correctional Services Corp. v. Malesko*, a federal prisoner claiming negligence or deliberate indifference has

10

access to "remedial mechanisms established by" the BOP. 534 U.S. 61, 74 (2001). Indeed, "many courts have explicitly recognized that the BOP's administrative remedy program is an alternative process that precludes a *Bivens* remedy." *Scates v. Craddock*, No. 1:17CV22, 2019 WL 6462846, at *8 (N.D.W. Va. July 26, 2019) (collecting authority), *report and recommendation adopted*, No. 1:17-CV-22, 2019 WL 4200862 (N.D.W. Va. Sept. 5, 2019); *see also Silva*, 45 F.4th at 1141 ("[W]e find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim.") The possibility of relief under the Federal Tort Claims Act (FTCA) also serves as an alternative remedy that counsels against recognizing an implied damages remedy, even if the FTCA does not "provide the exact same kind of relief *Bivens* would." *Oliva v. Nivar*, 973 F.3d 438, 443–44 (5th Cir. 2020).

    For the foregoing reasons, the court concludes that Jean's excessive force claims—the only ones asserted in his latest complaint—are not cognizable. Other courts, employing similar reasons, are in agreement. Indeed, following *Egbert*, circuit courts that have addressed this issue have thus far uniformly concluded that there is no viable *Bivens* claim in this context, as have many district courts. *See, e.g.*, *Silva v. United States*, 45 F.4th 1134, 1141–42 (10th Cir. 2022) (holding that the plaintiff did not have an Eighth Amendment *Bivens* claim against a BOP officer for use of excessive force); *Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *3–4 (6th Cir. 2022) (unpublished) (same); *Alsop v. Fed. Bureau of Prisons*, No. 22-1933, 2022 WL 16734497, at *3 (3d Cir. 2022) (unpublished) (citing to *Egbert* and concluding that a claim of excessive force against a BOP correctional officer was "not a basis for relief under *Bivens*"); *Baldwin v. Hutson*, No. 6:19-CV-151-REW-HAI, 2022 WL 4715551, at *4–5 (E.D. Ky. Sept. 30, 2022) (holding that *Egbert* forecloses a cause of action based on an excessive use of force by BOP officers against a prisoner); *Morel v. Dep't of Just.*, No. CV 7:22-015-DCR, 2022 WL

11

4125070, at *3 (E.D. Ky. Sept. 9, 2022) (same); *Landis*, 2022 WL 2677472, at *7 & n.5 (same and collecting authority); *Bivens v. Blaike*, No. 21-CV-00783-PAB-NYW, 2022 WL 2158984, at *6 (D. Colo. June 15, 2022), *report and recommendation adopted,* No. 21-CV-00783-PAB-NYW, 2022 WL 2716533 (D. Colo. July 13, 2022) (same). *Cf. Mejia v. Miller*, 53 F.4th 501, 506–07 (9th Cir. 2002) (concluding that, based on the reasoning of *Egbert*, there was no *Bivens* cause of action for excessive force against a Bureau of Land Management employee during arrest).

## III.  CONCLUSION

It is clear that Jean's excessive force claims would extend *Bivens* in to a new context. As the Supreme Court made clear in *Egbert*, whether to allow a damages remedy in a new context is almost always a policy decision to be made not by the courts, but by Congress. And this court is obligated to faithfully apply binding precedent, such as *Egbert*, in the cases before it, no matter how egregious the allegations of abuse are. Based on the court's reading of *Egbert*, and the currently unanimous circuit authority holding that there is not a damages remedy for excessive force claims by a federal inmate against BOP officers, the court concludes that there is no damages remedy for Jean's claims. Accordingly, although his motion to amend has been granted insofar as the court has considered his claims, those claims are subject to dismissal.

An appropriate order will be entered.

Entered: December 27, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge
